07687A-10003/JBC:caw                                    Firm No. 06347

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

QBE INSURANCE COMPANY           )
and UNIVERSAL RESTORATION       )
SERVICES, INC.,                 )
                                )
    Plaintiffs,                )
                                )
v.                              )          No.
                                )
THE BURLINGTON INSURANCE        )
COMPANY,                        )
                                )
    Defendant.                 )

2010CH08653
CALENDAR/ROOM 11
TIME 00:00
Declaratory Jdgmt

### COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES Plaintiffs, QBE Insurance Company ("QBE"), and UNIVERSAL

RESTORATION SERVICES, INC., ("URS") by and through their attorneys, JOHNSON &

BELL, LTD., and for their Complaint for Declaratory Judgment action against Defendant, THE

BURLINGTON INSURANCE COMPANY ("TBIC"), states as follows:

### INTRODUCTION

1.    This declaratory action is brought pursuant to 735 ILCS 5/2-701 and involves the

respective rights and duties as between QBE, URS and TBIC, and arising out of claims for

insurance coverage for an alleged construction incident occurring on or about July 26, 2003

wherein Tadeusz Kostyra was an employee of Orzell Construction Company ("Orzell"), a

subcontractor to URS, and was working in the course of his employment with Orzell when he

was involved in an accident sustaining injuries.



EXHIBIT
A

2.      In this insurance coverage action, QBE and URS seeks a declaration that TBIC owed the sole duty to defend and indemnify URS with respect to the underlying action filed in the Circuit Court of Cook County, Illinois, under case number 05 L 08186 (the <u>Kostyra</u> lawsuit).

**THE PARTIES**

3.      Plaintiff, QBE, is organized under the laws of Delaware and issued a commercial general liability insurance policy to URS under policy No. FCG00000707037-1, effective June 18, 2003 to June 18, 2004, with liability limits of $1,000,000 per occurrence.

4.      Plaintiff, URS, is engaged in the business of construction, and was named as an insured under the subject QBE policy, referenced in paragraph 3 above, and had entered into a contract agreement with plaintiff's employer Orzell.

5.      Defendant, TBIC, issued a commercial general liability policy to Orzell under policy No. 118B000290, effective June 8, 2003 to June 8, 2004, with liability limits of $1,000,000 per occurrence.

6.      On February 21, 2007, URS made a targeted tender of the <u>Kostyra</u> lawsuit pursuant to <u>John Burns Construction Co. v. Indiana Insurance Co.</u>, 189 Ill. 2d 570, 727 N.E.2d 2111 (2000), in writing to Orzell under the TBIC policy identified above requesting defense and indemnification in connection with the <u>Kostyra</u> suit. (See attached Exhibit A.)

7.      On March 1, 2007, TBIC denied the tender of defense on the grounds that URS was not named on Orzell's CGL policy issued with TBIC. (See attached Exhibit B.)

8.      On March 21, 2007, QBE and URS requested a copy of the subject policy with all endorsements. (See attached Exhibit C.)

2

9.     On March 30, 2007, the subject policy was produced and it included a copy of an additional insured endorsement. (See attached Exhibit D.) The subject endorsement, in fact, specifically named URS as an additional insured, and indicated that the subject policy identified above was amended "to include as an insured the person or organization shown in the schedule as an insured, but only with respect to liability arising out of your [Orzell's] operations or premises owned  by or rented to you."

10.     In light of the foregoing, on April 7, 2007, TBIC on behalf of Orzell accepted the tender of defense and indemnification of URS without reservation and on or about May 2, 2007, appointed its chosen defense counsel to defend URS.  (A copy of the substitution of attorneys form is attached as Exhibit E.)

11.     On or about November 24, 2008, the aforementioned attorneys retained by TBIC wrote advising that TBIC had accepted the tender of defense by URS to Orzell, that since the date of acceptance of the tender of defense, the case has "progressed negatively and it appears that there is a potential for exposure above the $1,000,000 Orzell policy limits" and asked that URS own insurers be notified of this situation. (See attached Exhibit F.)

12.     Thereafter, on or about December 18, 2009, TBIC wrote a letter asserting that "Burlington Insurance Company has been providing a defense to Universal Restoration Services (hereinafter URS) and that 'given the active negligence of URS, TBIC requests your participation in the settlement offer to plaintiff.'"  Further, for the first time, TBIC asserted that "the defense of URS has been undertaken under the terms and conditions of the additional insured endorsement.  Based on recently obtained discovery it appears that liability arises out of the active negligence of URS.  Because of such development, TBIC's continued defense of URS and any further investigation of this matter will be subject to a reservation of rights based on the

endorsement of the policy." Further, in an apparent effort to assert a reservation of rights, TBIC advised that "the AI endorsement does not provide coverage for the acts of negligence of URS." (See a copy of the subject letter attached as Exhibit G.)

13.     The trial of the <u>Kostyra</u> lawsuit commenced on January 5, 2010, and the first notice to QBE of the fact that the matter was set for trial was on or about December 29, 2009.

14.     Based upon TBIC's sudden and late attempt at asserting reservation of rights, personal counsel for URS wrote QBE advising that he wished QBE to continue its efforts to cause TBIC to resolve the matter within its policy limits, but to the extent the case could not be resolved within TBIC policy limits, that QBE resolve the matter with its additional policy limits and protect its insured from an adverse jury verdict.  (See the letter written by URS' personal attorneys, attached hereto as Exhibit H.)

15.     Immediately upon receipt of TBIC's December 18, 2009 (Exhibit G), Plaintiffs asserted that it disagreed with TBIC's attempted reservation and interpretation of the subject additional insured endorsement, and immediately demanded that the case be settled within the primary limits of the Orzell policy. (See attached Exhibit I.)

16.     Pursuant to the discussions among the underlying parties before the trial judge on or about January 8, 2010, it was clear that based upon the judge's recommendation and agreement between the parties that the case could settle within the primary limits of the Orzell policy. Nevertheless, TBIC refused to settle the case within the policy limits, and continued to demand that QBE participate in funding the settlement.  Accordingly, QBE agreed to set aside its differences with TBIC in the interest of protecting URS, and agreed to fund a portion of the settlement with complete reservation of rights to pursue this declaratory judgment action for

reimbursement of the funds provided as a result of TBIC's position and derogation of its duties under its insurance contract. As a result, the subject underlying case settled for $750,000. TBIC funded $575,000 of the settlement under its policy issued to Orzell. QBE funded the remaining $175,000 from its policy issued to URS.

### THE TBIC/ORZELL POLICY

17.     The subject Orzell policy, and specifically, the additional insured endorsement attached thereto, provides unequivocally, that URS was named as an additional insured-designated person or organization under the subject policy and that as such, the policy was amended to include as an insured URS with respect to "liability arising out of your operations" or premises owned by or rented to you. (See Exhibit D.) Further, the subject TBIC had policy limits of $1,000,000 primary, and $2,000,000 in the aggregate. (See a copy of the subject policy attached as Exhibit J.)

### THE UNDERLYING ACTION

18.     Tadeusz Kostyra filed the underlying action in the Circuit Court of Cook County, alleging he was injured in the course of employment of Orzell.

19.     Given Kostyra's accident occurred during the course of his employment for Orzell on behalf of URS, this "occurrence," "arises out of" the operations of Orzell, as a matter of law.

20.     TBIC had a duty to defend and indemnify URS against the underlying Kostyra complaint to the full amount of its policy limits. In that regard, TBIC was primarily liable for the defense and indemnification of URS.

21.     TBIC had no basis to assert that its policy and its additional insured endorsement precluded coverage to URS based upon "active negligence of URS." In this regard, TBIC

improperly represented that the additional insured endorsement "does not provide coverage for active of negligence of URS." In point of fact, the subject additional insured endorsement says no such thing.

22.     TBIC is barred from asserting a reservation of rights on or about December 18, 2009 based upon the terms of the policy and the additional insured endorsement, and its acceptance of tender without reservation in April 2007.

23.     QBE had no duty to pay any settlement or judgment on behalf of its named insured URS within the primary limits of the Orzell policy.

24.     QBE had no duty to pay $175,000 to resolve this matter on behalf of its insured, as a result of the attempted reservation of rights by TBIC.

25.     Pursuant to 735 ILCS 5/2-701, QBE and URS are entitled to a judicial determination concerning the scope and nature of their rights and obligations, under the QBE policy issued, and a judicial determination of the rights and obligations of TBIC under the subject Orzell CGL policy.

26.     Based upon the foregoing facts, QBE and URS are entitled to equitable contribution from TBIC, by reason of TBIC primary duty to defend and indemnify URS up to its policy limits and TBIC's failure and refusal to meet its obligations under the subject policy.

27.     Based upon the policy language within the TBIC policy, TBIC was primarily liable for the defense and indemnity of URS with respect to the underlying Orzell case.

28.     Because TBIC failed to live up to its obligations under its policy, QBE was forced to settle the underlying Orzell action, despite QBE's status as a secondarily liable carrier.

29.     QBE's settlement of the underlying Orzell case discharged its liability to URS and extinguished TBIC's liability under its policy.   As a result, QBE is entitled to equitable subrogation.

30.     Based upon the foregoing facts, TBIC's refusal to indemnify its insured up to its policy limits, TBIC's failure to settle the underlying action within its policy limits when given the opportunity to do so, and its assertion of a late and ineffective reservation of rights based upon non-existent policy language was both vexatious and unreasonable.   As a result, QBE and URS are entitled to relief pursuant to 215 ILCS 5/155.

WHEREFORE, QBE requests that this Court enter judgment in its favor and an order declaring the rights and obligations of QBE as follows:

a.   TBIC had a primary non-contributory duty to defend and indemnity URS to the full amount of its policy limits under the subject policy listed above;

b.   QBE has no obligation under its policy to defend, and/or indemnify URS for the subject resolution of the underlying case as long as the case was resolved within the primary limits of the Orzell policy;

c.   that TBIC was barred from and estopped from asserting any reservation of rights based upon the insurance contract and/or additional insured endorsement as set forth in its December 18, 2009 letter;

d.   that QBE is entitled to full reimbursement of its $175,000 settlement contribution made under reservation of rights in an effort to protect its named insured URS from the December 18, 2009 attempt at reservation of rights of TBIC;

e.   that TBIC vexatiously and unreasonably attempted to assert a reservation of rights on or about December 18, 2009, less than three weeks before trial, by driving a wedge between QBE and its named insured, URS, thus forcing QBE to participate in the settlement of the case for the benefit of URS wherein it was otherwise not obligated to do so and in violation of Section 155 of the Insurance Code;

f.   that QBE and URS are entitled to costs, attorney fees, statutory fees and relief pursuant Sec. 215 ILCS 5/155 of the Illinois Insurance Code

g.      granting costs and fees incurred in association with reacting to the December 18, 2009 letter, participating in settlement discussions, and getting the case resolved to the benefit of URS, under reservation of rights;

h.      granting costs and fees associated with the filing and prosecution of this declaratory action;

i.      and granting such other and appropriate relief as this Court deems just and proper.


Respectfully submitted,

JOHNSON & BELL, LTD.


BY: _____
      Joseph B. Carini, III
      Attorneys for QBE Insurance Company
      and Universal Restoration Services, Inc.


JOHNSON & BELL, LTD.
33 W. Monroe, #2700
Chicago, Illinois  60603
312/372-0770
Firm No. 06347



February 21, 2007

312/984-6668
carinij@jbltd.com

Orzel Development, Inc.
1739 Lunt
Des Plaines, IL 60018

Attention:   Mr. Paul Orzel

Re:   *Kostyra v. Diameters South Corporation, et al.*
      Court Number:      05 L 08186
      Our File Number:   07687A-06036

Dear Mr. Orzel:

        Our office has been retained to represent Universal Restoration Services, Inc. in connection with a lawsuit filed against it by Orzel Development employee Tadeusz Kostyra under Court Number 05 L 08186, currently pending in the Circuit Court of Cook County Illinois. A copy of the Complaint is attached.   Your employee contends that he was injured while working at a project under construction on or about July 26, 2003 at 2910 S. State Street, Chicago Heights, Cook County, Illinois. He contends that he was injured while performing his job related duties at this project. He has sued Universal Restoration Services, Inc., the general contractor on the project, for injuries that allegedly arose out of this accident.

        As you know, Universal Restoration Services required Orzel to complete a subcontractor packet before it was allowed to perform work on behalf of Universal Restoration Services. Pursuant to this packet, Orzel was required to procure certain policies of insurance before you would be allowed to commence any work as a precondition to the work.   That insurance requirement included a general liability policy with insurance of not less than $1,000,000 per person, and a requirement that Orzel name Universal Restoration Services, Inc. as an additional insured on said policy.   A copy of Universal Restoration Services subcontractor packet is attached as well.   As you know, pursuant to this requirement, Orzel provided Universal Restoration Services with a certificate of insurance identifying Burlington Insurance Company as

Mr. Paul Orzel
February 21, 2007
Page 2

its GL carrier for the time frame referenced in plaintiff's accident.  It also indicates that Universal Restoration Services, as certificate holder, was an additional insured under the Burlington Insurance Company policy.

. Pursuant to your insurance obligations, we hereby tender the defense of this case on behalf of Universal Restoration Services, Inc., and request that you notify your insurance company of this request, and immediately ask that they accept the defense and indemnification of Universal Restoration Services, Inc. as an additional insured on their policy.  Please be advised that this is a targeted tender of defense pursuant to John Burns Construction Co. v. Indiana Insurance Co., 189 Ill. 2d. 570, 727 NE2d 211 (2000).  We look forward to your prompt response to this request.

Very truly yours,

JOHNSON & BELL, LTD.

Joseph B. Carini, III

JBC:caw

Enclosure

cc:    Daniel O'Brien (w/o enclosures)
       Universal Restoration Services, Inc.

IN THE CIRCUIT COURT OF COOK COUNTY ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

TADEUSZ KOSTYRA,                          )
                                          )
                 Plaintiff,               )
                                          )
        -vs-                              )        No. 05 L 08186
                                          )
DIAMETERS SOUTH CORPORATION,              )
an Illinois Corporation, and  UNIVERSAL   )
RESTORATION SERVICES, INC., an            )
Illinois Corporation                      )
                                          )
                 Defendants.              )

## FIRST AMENDED COMPLAINT AT LAW

NOW COMES the Plaintiff, TADEUSZ KOSTYRA, by and through his attorneys,
Nemeroff Law Offices, Ltd., and complains of Defendants DIAMETERS SOUTH
CORPORATION and UNIVERSAL RESTORATION SERVICES, INC., as follows:

### COUNT I
### (KOSTYRA vs. DIAMETERS SOUTH CORPORATION)

1.      On or about July 26, 2003, Defendant Diameters South Corporation
("DIAMETERS") was an Illinois corporation doing business in Cook County, Illinois.

2.      On or about July 26, 2003,  DIAMETERS maintained its principal
place of business at 2910 S. State Street in Chicago Heights, Cook County, Illinois.

3.      On or about July 26, 2003, Defendant Universal Restoration Services, Inc.
("UNIVERSAL") was an Illinois corporation doing business in Cook County, Illinois.

4      On or about July 26, 2003,  plaintiff Tadeusz Kostyra ("KOSTYRA")
resided in Chicago, Cook County, Illinois.

5.      On or about July 26, 2003, plaintiff KOSTYRA was doing cleanup
work on the roof of the building located at 2910 S. State St., Chicago Heights, Illinois
as part of his employment with Orzel Development, Inc.

6.      DIAMETERS was the owner of the premises at 2910 S. State St.,
Chicago Heights, IL.

7.      At all relevant times, plaintiff KOSTYRA was legally on the property located at
2910 S. State St., Chicago Heights, IL.

8.      On the aforementioned date, plaintiff KOSTYRA was on the roof of the building located at 2910 S. State St., Chicago Heights, IL doing cleanup work.

9.      At all relevant times, plaintiff KOSTYRA was in the exercise of due care and caution for his own safety and for the safety of others.

10.     As plaintiff was doing his cleanup work, he encountered a damaged portion of the roof and fell through a hole on said roof.

11.     On July 26, 2003, DIAMETERS owed to plaintiff KOSTYRA, a duty to operate, maintain and control their property in a safe and lawful manner.

12..    Notwithstanding said duty, at said time and place, defendant DIAMETERS was guilty of one or more of the following careless and negligent acts or omissions:

    (a)  Failed to properly maintain its roof;

    (b)  Failed to properly cover the damage on its roof;

    (c)  Failed to adequately warn of the dangerous condition on its roof;

    (d)  Failed to adequately repair the damage to its roof; and

    (e)  Was otherwise negligent so as to cause plaintiff to fall through a hole in the roof.

13.     That as a proximate result of one or more of the foregoing negligent acts and/or omissions of the defendant DIAMETERS, plaintiff KOSTYRA suffered serious personal and pecuniary injuries, including but not limited to medical expenses, past and future, pain and suffering, past and future, loss of normal life, past and future, disfigurement, past and future, lost wages and other damages.

WHEREFORE, plaintiff TADEUSZ KOSTYRA demands judgment against DIAMETERS SOUTH CORPORATION, in the amount in excess of FIFTY THOUSAND DOLLARS ($50,000) plus costs.

## COUNT II
### (KOSTYRA vs. UNIVERSAL RESTORATION SERVICES)

1-10   Plaintiff, KOSTYRA, realleges and restates Paragraphs 1 - 10 of Count I of this

Complaint as though fully set forth herein as Paragraphs 1 - 10 of this Count II.

    11.    On July 26, 2003, UNIVERSAL was a contractor making improvements to real property of the premises at 2910 S. State St., Chicago Heights, IL.

    12.    On July 26, 2003, UNIVERSAL owed to plaintiff KOSTYRA, a duty to operate, maintain and control their property in a safe and lawful manner.

    13.    Notwithstanding said duty, at said time and place, defendant UNIVERSAL was guilty of one or more of the following careless and negligent acts or omissions:

        (a)    Failed to properly cover the damage on the roof;

        (b)    Failed to adequately warn of the dangerous condition on the roof;

        (c)    Failed to adequately and properly repair the damage to the roof; and

        (d)    Was otherwise negligent so as to cause plaintiff to fall through a hole in the roof.

    14.    That as a proximate result of one or more of the foregoing negligent acts and/or omissions of the defendant UNIVERSAL, plaintiff KOSTYRA suffered serious personal and pecuniary injuries, including but not limited to medical expenses, past and future, pain and suffering, past and future, loss of normal life, past and future, disfigurement, past and future, lost wages and other damages.

    WHEREFORE, plaintiff TADEUSZ KOSTYRA demands judgment against UNIVERSAL RESTORATION SERVICES, INC., in the amount in excess of FIFTY THOUSAND DOLLARS ($50,000) plus costs.

                                Respectfully submitted,

                                  _____

                                David Nemeroff, attorney for Plaintiff

NEMEROFF LAW OFFICES, LTD.
Attorneys for Plaintiff
161 N. Clark St., Suite 3575
Chicago, IL 60601
(312) 629-8800
Atty. No. 34371

Jul 14 03 02:11p    Paul Orzel              847\451-8740              P.2

# ACORD™  CERTIFICATE OF LIABILITY INSURANCE

| | DATE 07/14/2003 |
|---|---|

| PRODUCER | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. |
|---|---|
| SPHINX FINANCIAL SERVICES, INC<br>3320 N CENTRAL AVE<br><br>CHICAGO            IL  60634- | |

| | INSURERS AFFORDING COVERAGE |
|---|---|
| INSURED | INSURER A: BURLINGTON INS. CO |
| ORZEL DEVELOPMENT INC<br>9745 RICHARD | INSURER B: LIBERTY MUTUAL |
| | INSURER C: |
| | INSURER D: |
| CHICAGO            IL  60131- | INSURER E: |

## COVERAGES

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|
| A | GENERAL LIABILITY<br>[X] COMMERCIAL GENERAL LIABILITY<br>[ ] CLAIMS MADE  [X] OCCUR | 118B000290 | 06/08/2003 | 06/08/2004 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | FIRE DAMAGE (Any one fire) | $ 100,000 |
| | | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER:<br>[ ] POLICY [ ] PRO-JECT [ ] LOC | | / / | / / | GENERAL AGGREGATE | $ 2,000,000 |
| | | | / / | / / | PRODUCTS - COMP/OP AGG | $ 1,000,000 |
| | AUTOMOBILE LIABILITY<br>[ ] ANY AUTO<br>[ ] ALL OWNED AUTOS<br>[ ] SCHEDULED AUTOS<br>[ ] HIRED AUTOS<br>[ ] NON-OWNED AUTOS | | / /<br>/ /<br>/ /<br>/ /<br>/ / | / /<br>/ /<br>/ /<br>/ /<br>/ / | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | | | | BODILY INJURY (Per person) | $ |
| | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | GARAGE LIABILITY<br>[ ] ANY AUTO | | / / | / / | AUTO ONLY - EA ACCIDENT | $ |
| | | | | | OTHER THAN  EA ACC<br>AUTO ONLY:        AGG | $ |
| | EXCESS LIABILITY<br>[ ] OCCUR  [ ] CLAIMS MADE<br>[ ] DEDUCTIBLE<br>[ ] RETENTION $ | | / / | / / | EACH OCCURRENCE | $ |
| | | | | | AGGREGATE | $ |
| | | | | | | $ |
| | | | | | | $ |
| B | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY | WC5-34S-332757-012 | 06/09/2003 | 06/09/2004 | [ ] WC STATU-TORY LIMITS  [ ] OTHER | |
| | | | | | E.L. EACH ACCIDENT | $ 100,000 |
| | | | | | E.L. DISEASE - EA EMPLOYEE | $ 100,000 |
| | | | | | E.L. DISEASE - POLICY LIMIT | $ 500,000 |
| | OTHER | | / / | / / | | |

ENTERED
JUL 2 2 2003
BY: OLGA

DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/EXCLUSIONS ADDED BY ENDORSEMENT/SPECIAL PROVISIONS
CERTIFICATE HOLDER IS ALSO AN ADDITIONAL INSURED.

| CERTIFICATE HOLDER   [X] ADDITIONAL INSURED; INSURER LETTER: _X_ | CANCELLATION |
|---|---|
| UNIVERSAL RESTORATION SERVICES<br>390 HOLBROOK DR.<br>WHEELING        IL  60090- | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL _10_ DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES.<br>AUTHORIZED REPRESENTATIVE |

ACORD 25-S (7/97)                                                                © ACORD CORPORATION 1988
INS025S (9910).01          ELECTRONIC LASER FORMS, INC. - (800)327-0545                    Page 1 of 2

## IMPORTANT

If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

## DISCLAIMER

The Certificate of Insurance on the reverse side of this form does not constitute a contract between the issuing insurer(s), authorized representative or producer, and the certificate holder, nor does it affirmatively or negatively amend, extend or alter the coverage afforded by the policies listed thereon.



**UNIVERSAL**
Restoration Services

Dear Sub-Contractor:

Thank you for your interest in signing up with Universal Restoration Services, Inc. Universal Restoration Services is a catastrophe restoration company and has been successfully servicing the insurance industry for well over a decade. Our success is dependent on customer satisfaction; therefore, we choose sub-contractors who will perform honest, quality work at a reasonable price.

**Required Documents**

Your first check cannot be issued without the enclosed documents completed and on file in our office.

The first is an information sheet and the second is a W-9 form. Both these forms should be completed, signed and returned to our office as soon as possible.

The third is the insurance information and list of requirements. Please provide this letter to your insurance carrier and an original certificate of insurance must be mailed directly to our office.

**Payment Process**

A signed contract must be on file before work can begin. Once work is completed, submit an original invoice to the attention of your Project Manager. Once the Project Manager approves the invoice and the homeowner is satisfied with the work completed, the invoice will be processed.

Checks are printed on Fridays only and are available after 3:00 p.m. You may receive your checks one of two ways; either way, a waiver of lien must be completed and signed by an officer of your company. One, you may come into the office to pick-up the check and complete the waiver. Or two, you may fax the completed waiver (please mail the original) and then the check will be placed in the mail.

We look forward to working with you. If you have any questions, please do not hesitate to call me at (888) 877-6766.

Sincerely,

UNIVERSAL RESTORATION SERVICES, INC.

Shelley Vansant



## Information and Agreement between Sub-Contractor and Universal Restoration Services, Inc.

Corporate Name _____     Years in business _____

Office # _____ Fax # _____     E-Mail _____

Specialty (Trade) _____

Officers of Corporation:

Name _____ Cell# _____ Pager# _____

Name _____ Cell# _____ Pager# _____

**Mailing Address** _____
　　　　　　　　　　Street　　　　　　City　　　　　State　　　　Zip code

Do you perform 24-hour emergency services? Tarping, board-ups, shoring, etc. _____

Is your company licensed to do work in the City of Chicago? _____ Cook County _____
　　　　　　　　　　　　　　　　　　　　　　　　　Yes/No　　　　　　　　　Yes/No

If Yes (required):　Chicago _____　Cook County _____
　　　　　　　　　　　　　　License #　　　　　　　　　　　　　License #

References (required):

_____   _____   _____
Name                      Telephone#                Work Performed

_____   _____   _____
Name                      Telephone#                Work Performed

Sub-Contractor agrees that by signing this agreement not to lien, or threatens to lien, any property where Universal Restoration Services, Inc. is the contractor. Additionally, any and all potential disputes between Universal Restoration Services, Inc. and Sub-Contractor shall be settled by binding arbitration through the American Arbitration Association. Sub-Contractor agrees to warranty all labor and materials for all work performed for a minimum of one year. Prior to commencing any work and as a pre-condition to the work commencing, Sub-Contractor shall provide an insurance policy of no less than $1,000,000.00 liability per person/per occurrence and worker's compensation insurance of not less than $500,000.00. Further, Sub-Contractor shall name Universal Restoration Services, Inc. as an additional insured on all insurance policies required hereunder prior to the commencement of the work. These statements apply to all work performed on behalf of Universal Restoration Services, Inc. Sub-Contractor further agrees not to subcontract any work without written permission from Universal Restoration Services, Inc.

_____   _____   _____
Signed acceptance of terms stated above        Title                    Date

| Form **W-9**<br>(Rev. October 2004)<br>Department of the Treasury<br>Internal Revenue Service | **Request for Taxpayer<br>Identification Number and Certification** | Give form to the<br>requester. Do not<br>send to the IRS. |
|---|---|---|

**Name (as reported on your income tax return)**

**Business name, if different from above**

**Check appropriate box:** ☐ Individual/<br>Sole proprietor ☐ Corporation ☐ Partnership ☐ Other ▶ .................... ☐ Exempt from backup<br>withholding

**Address (number, street, and apt. or suite no.)**

**City, state, and ZIP code**

**Requester's name and address (optional)**

Universal Restoration Services<br>390 Holbrook Drive<br>Wheeling, IL 60090

**List account number(s) here (optional)**

*Print or type — See Specific Instructions on page 2.*

**Part I   Taxpayer Identification Number (TIN)**

Enter your TIN in the appropriate box. The TIN provided must match the name given on Line 1 to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** *If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.*

**Social security number**

| | | | — | | | — | | | | |
|---|---|---|---|---|---|---|---|---|---|---|

**or**

**Employer identification number**

| | | — | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|

**Part II   Certification**

Under penalties of perjury, I certify that:

1.  The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2.  I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3.  I am a U.S. person (including a U.S. resident alien).

**Certification instructions.** You must cross out Item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, Item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 4.)

**Sign<br>Here** | **Signature of<br>U.S. person** ▶ | **Date** ▶

**Purpose of Form**

A person who is required to file an information return with the IRS, must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

**U.S. person.** Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1.  Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2.  Certify that you are not subject to backup withholding, or

3.  Claim exemption from backup withholding if you are a U.S. exempt payee.

**Note.** *If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.*

For federal tax purposes you are considered a person if you are:

● an individual who is a citizen or resident of the United States,

● a partnership, corporation, company, or association created or organized in the United States or under the laws of the United States, or

● any estate (other than a foreign estate) or trust. See Regulation section 301.7701-6(a) for additional information.

**Foreign person.** If you are a foreign person, use the appropriate Form W-8 (see Publication 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the recipient has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement that specifies the following five items:

1.  The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2.  The treaty article addressing the income.

3.  The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

Cat. No. 10231X    Form **W-9** (Rev. 10-2004)

4. The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

*Example.* Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity not subject to backup withholding, give the requester the appropriate completed Form W-8.

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS 28% of such payments (after December 31, 2002). This is called "backup withholding." Payments that may be subject to backup withholding include interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester, or

2. You do not certify your TIN when required (see the Part II instructions on page 4 for details), or

3. The IRS tells the requester that you furnished an incorrect TIN, or

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See the instructions below and the separate Instructions for the Requester of Form W-9.

**Penalties**

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of Federal law, the requester may be subject to civil and criminal penalties.

**Specific Instructions**

**Name**

If you are an individual, you must generally enter the name shown on your social security card. However, if you have changed your last name, for instance, due to marriage without informing the Social Security Administration of the name change, enter your first name, the last name shown on your social security card, and your new last name.

If the account is in joint names, list first, and then circle, the name of the person or entity whose number you entered in Part I of the form.

**Sole proprietor.** Enter your individual name as shown on your social security card on the "Name" line. You may enter your business, trade, or "doing business as (DBA)" name on the "Business name" line.

**Limited liability company (LLC).** If you are a single-member LLC (including a foreign LLC with a domestic owner) that is disregarded as an entity separate from its owner under Treasury regulations section 301.7701-3, enter the owner's name on the "Name" line. Enter the LLC's name on the "Business name" line. Check the appropriate box for your filing status (sole proprietor, corporation, etc.), then check the box for "Other" and enter "LLC" in the space provided.

**Other entities.** Enter your business name as shown on required Federal tax documents on the "Name" line. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on the "Business name" line.

**Note.** You are requested to check the appropriate box for your status (individual/sole proprietor, corporation, etc.).

**Exempt From Backup Withholding**

If you are exempt, enter your name as described above and check the appropriate box for your status, then check the "Exempt from backup withholding" box in the line following the business name, sign and date the form.

Generally, individuals (including sole proprietors) are not exempt from backup withholding. Corporations are exempt from backup withholding for certain payments, such as interest and dividends.

**Note.** If you are exempt from backup withholding, you should still complete this form to avoid possible erroneous backup withholding.

**Exempt payees.** Backup withholding is not required on any payments made to the following payees:

1. An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2),

2. The United States or any of its agencies or instrumentalities,

3. A state, the District of Columbia, a possession of the United States, or any of their political subdivisions or instrumentalities,

4. A foreign government or any of its political subdivisions, agencies, or instrumentalities, or

5. An international organization or any of its agencies or instrumentalities.

Other payees that may be exempt from backup withholding include:

6. A corporation,

7. A foreign central bank of issue,

8. A dealer in securities or commodities required to register in the United States, the District of Columbia, or a possession of the United States,

9. A futures commission merchant registered with the Commodity Futures Trading Commission,

10. A real estate investment trust,

11. An entity registered at all times during the tax year under the Investment Company Act of 1940,

12. A common trust fund operated by a bank under section 584(a),

13. A financial institution,

14. A middleman known in the investment community as a nominee or custodian, or

15. A trust exempt from tax under section 664 or described in section 4947.

The chart below shows types of payments that may be exempt from backup withholding. The chart applies to the exempt recipients listed above, 1 through 15.

| IF the payment is for . . . | THEN the payment is exempt for . . . |
|---|---|
| Interest and dividend payments | All exempt recipients except for 9 |
| Broker transactions | Exempt recipients 1 through 13. Also, a person registered under the Investment Advisers Act of 1940 who regularly acts as a broker |
| Barter exchange transactions and patronage dividends | Exempt recipients 1 through 5 |
| Payments over $600 required to be reported and direct sales over $5,000 ¹ | Generally, exempt recipients 1 through 7 ² |

¹See Form 1099-MISC, Miscellaneous Income, and its instructions.

²However, the following payments made to a corporation (including gross proceeds paid to an attorney under section 6045(f), even if the attorney is a corporation) and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees; and payments for services paid by a Federal executive agency.

## Part I. Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see How to get a TIN below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN. However, the IRS prefers that you use your SSN.

If you are a single-owner LLC that is disregarded as an entity separate from its owner (see Limited liability company (LLC) on page 2), enter your SSN (or EIN, if you have one). If the LLC is a corporation, partnership, etc., enter the entity's EIN.

**Note.** See the chart on page 4 for further clarification of name and TIN combinations.

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local Social Security Administration office or get this form on-line at www.socialsecurity.gov/online/ss-5.pdf. You may also get this form by calling 1-800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can apply for an EIN online by accessing the IRS website at www.irs.gov/businesses/ and clicking on Employer ID Numbers under Related Topics. You can get Forms W-7 and SS-4 from the IRS by visiting www.irs.gov or by calling 1-800-TAX-FORM (1-800-829-3676).

If you are asked to complete Form W-9 but do not have a TIN, write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note.** Writing "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

**Caution:** A disregarded domestic entity that has a foreign owner must use the appropriate Form W-8.

## Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if items 1, 4, and 5 below indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). Exempt recipients, see *Exempt From Backup Withholding* on page 2.

**Signature requirements.** Complete the certification as indicated in 1 through 5 below.

**1. Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

**2. Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

**3. Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

**4. Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

**5. Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), IRA, Coverdell ESA, Archer MSA or HSA contributions or distributions, and pension distributions.** You must give your correct TIN, but you do not have to sign the certification.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account [1] |
| 3. Custodian account of a minor (Uniform Gift to Minors Act) | The minor [2] |
| 4. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee [1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner [1] |
| 5. Sole proprietorship or single-owner LLC | The owner [3] |

| For this type of account: | Give name and EIN of: |
|---|---|
| 6. Sole proprietorship or single-owner LLC | The owner [3] |
| 7. A valid trust, estate, or pension trust | Legal entity [4] |
| 8. Corporate or LLC electing corporate status on Form 8832 | The corporation |
| 9. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 10. Partnership or multi-member LLC | The partnership |
| 11. A broker or registered nominee | The broker or nominee |
| 12. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name and you may also enter your business or "DBA" name on the second name line. You may use either your SSN or EIN (if you have one). If you are a sole proprietor, IRS encourages you to use your SSN.

[4] List first and circle the name of the legal entity, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.)

Note. If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons who must file information returns with the IRS to report interest, dividends, and certain other income paid to you, mortgage interest you paid, the acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA, or Archer MSA or HSA. The IRS uses the numbers for identification purposes and to help verify the accuracy of your tax return. The IRS may also provide this information to the Department of Justice for civil and criminal litigation, and to cities, states, and the District of Columbia to carry out their tax laws. We may also disclose this information to other countries under a tax treaty, or to Federal and state agencies to enforce Federal nontax criminal laws and to combat terrorism. The authority to disclose information to combat terrorism expired on December 31, 2003. Legislation is pending that would reinstate this authority.

You must provide your TIN whether or not you are required to file a tax return. Payers must generally withhold 28% of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to a payer. Certain penalties may also apply.

Printed on recycled paper

*U.S. Government Printing Office: 2004—309-128



**UNIVERSAL**
**Restoration Services**

Dear Sub-Contractor:

You are required to provide a Certificate of Insurance evidencing the following coverage:

➢ **COMMERCIAL LIABILITY** including Contract Liability insuring the work contract indemnifications
- Naming **Universal Restoration Services, Inc.** as *certificate holder* and *Additional Insured -- owners, lessees or contractors  (Form B) # CG 20 10 11 85* endorsement.
- The certificate and endorsement must state that the General Liability Insurance is **primary irrespective of other insurance covering the additional insureds** and the insurance company will not seek contribution from other insurance available to the additional insured(s).
- The certificate must state that the General Liability Insurance includes a *waiver of transfer of rights of recovery* against the additional insured(s) --endorsement # CG 24 04 10 93.
- Minimum limits:

| | |
|---|---|
| Bodily Injury and Property Damage per occurrence | $ 1,000,000 |
| Fire Damage Legal Liability | $     50,000 |
| Personal and Advertising Liability | $ 1,000,000 |
| Medical Payments | $      5,000 |
| General Aggregate other than products | $ 1,000,000 |
| General Aggregate-products and completed operations for two (2) years after completion of all work under the subcontract | $ 1,000,000 |

Per Project Aggregate Endorsement

➢ **COMMERCIAL AUTOMOBILE LIABILITY** insuring all owned, non-owned and hired vehicles with limits of not less than $1,000,000 each accident.

➢ **STATUTORY WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY** including a *waiver of the insurer's right to recover* against any of the additional insured listed on the certificate. Coverage B limits not less than $500,000 / $500,000 / $500,000.

➢ **UMBRELLA LIABILITY** with a per-occurrence and annual aggregate limit of not less than $2,000,000.00.

The certificate must state that the referenced policies will **not be cancelled or non-renewed without 30 days written notice** to the certificate holder.

All referenced policies must be issued by an insurance company licensed to do business in Illinois with an **A.M Best's rating of "A VII"** or better.

Sincerely,

UNIVERSAL RESTORATION SERVICES, INC.

Shelley Vansant

February 21, 2007

**FILE COPY**

312/984-6668
carinij@jbltd.com

Burlington Insurance Company
238 International Road
Burlington, NC  27215

Re:     *Kostyra v. Diameters South Corporation, et al.*
       Court Number:     05 L 08186
       Our File Number:    07687A-06036

Dear Sir or Madam:

       Our office has been retained to represent Universal Restoration Services, Inc. in connection with a lawsuit filed against it by Orzel Development employee Tadeusz Kostyra under Court Number 05 L 08186, currently pending in the Circuit Court of Cook County Illinois. A copy of the Complaint is attached.  Plaintiff contends that he was injured while working at a project under construction on or about July 26, 2003 at 2910 S. State Street, Chicago Heights, Cook County, Illinois. He contends that he was injured while performing his job related duties at this project.  He has sued Universal Restoration Services, Inc., the general contractor on the project, for injuries that allegedly arose out of this accident.

       Universal Restoration Services required Orzel to complete a subcontractor packet before it was allowed to perform work on behalf of Universal Restoration Services.  Pursuant to this packet, Orzel was required to procure certain policies of insurance before it would be allowed to commence any work as a precondition to the work.  That insurance requirement included a general liability policy with insurance of not less than $1,000,000 per person, and a requirement that Orzel name Universal Restoration Services, Inc. as an additional insured on said policy.  A copy of Universal Restoration Services subcontractor packet is attached as well.  Pursuant to this requirement, Orzel provided Universal Restoration Services with the attached certificate of insurance identifying Burlington Insurance Company as its GL carrier for the time frame referenced in plaintiff's accident.  It also indicates that Universal Restoration Services, as certificate holder, was an additional insured under the Burlington Insurance Company policy.

Burlington Insurance Company
February 21, 2007
Page 2

Pursuant to your insurance obligations, we hereby tender the defense of this case on behalf of Universal Restoration Services, Inc., and immediately ask that you accept the defense and indemnification of Universal Restoration Services, Inc. as an additional insured on their policy.  Please be advised that this is a targeted tender of defense pursuant to John Burns Construction Co. v. Indiana Insurance Co., 189 Ill. 2d. 570, 727 NE2d 211 (2000).

We look forward to your prompt response to this request.

Very truly yours,

JOHNSON & BELL, LTD.

Joseph B. Carini, III

JBC:caw

Enclosure

cc:    Daniel O'Brien (w/o enclosures)
       Universal Restoration Services, Inc.